**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALMA BLAZQUEZ,** ) | |
| ) | |
| ) | |
| **Plaintiff** ) | |
| ) | **No. 05-CV-4389** |
| **v.** ) | |
| ) | **HONORABLE DAVID H. COAR** |
| **BOARD OF EDUCATION OF THE** ) | |
| **CITY OF CHICAGO; BARRY FRAZIN,** ) | |
| **personally and as former vice principal of** ) | |
| **John Coonley School; EDWARD RUYACK,** ) | |
| **personally and as former prcincipal of John** ) | |
| **Coonley School,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is a motion to dismiss filed by the Board of Education of the City of

Chicago ("Board of Ed"), Barry Frazin ("Frazin"), and Edward Ruyack ("Ruyack") (collectively

"Defendants") against Alma Blazquez ("Plaintiff") pursuant to Federal Rules of Civil Procedure

8 and 12. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED

in part.

**FACTS[1]**

The "facts" alleged in the complaint are assumed true for purposes of this motion.

Plaintiff was hired by the Board of Ed in August of 1999 to work within the Chicago Public

---

[1]As a general matter, Plaintiff has failed to include dates in her amended complaint.
However, where necessary this court will adopt dates or facts from her state complaint to make
up for this failing. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (stating
that, in considering a motion to dismiss, a court may consider the entire realm of facts in the
public record, including court documents filed in an earlier related state court case).

Schools ("CPS") system as a special education teacher at John Coonley Elementary School ("Coonley"). Seemingly throughout her professional tenure, Plaintiff was faced with a difficult teaching environment in which students would frequently misbehave, and where essential teaching resources were lacking. The administration of the school, particularly Defendants Frazin and Ruyack, did little to nothing to improve the classroom environment. Their negligent or reckless actions included: failing to provide Plaintiff with a teacher's aide; placing a disruptive student in the classroom and failing to discipline him subsequently; ignoring and/or engaging in racial and sexual harassment against the students; failing to provide proper funding and supplies; and excluding special education students from school field trips. Plaintiff complained about these problems multiple times, to Coonley and CPS administrators. Am. Compl. ¶¶ 38, 46, 48, 96.

These failings were made all the worse by the fact that Plaintiff's students, due to their special education status, were supposed to be afforded special protections and accommodations under federal law and general school policy. According to internal policies and state law, Defendants are responsible for providing these students with accommodations, as well as full and equal access to public education such as school facilities, support personnel, and extracurricular activities. Id. ¶¶ 6, 11, 17. The Board of Ed, and Defendants Frazin and Ruyack in their capacities as Coonley administrators, also received federal financial assistance and were therefore subject to federal laws protecting disabled students' equal access to educational resources. Id. ¶ 45. Defendants were aware that in the case of Plaintiff's students, equal access required additional accommodations, such as special supplies and support personnel. Id. ¶¶ 12, 18. Plaintiff repeatedly complained to CPS and Coonley administrators that these

accommodations were not being made, and that her students were being discriminated against because of their disabilities. Id. ¶¶ 38, 46, 48, 96. No remedies were provided.

Over Plaintiff's protests, a disruptive and abusive student referred to as "D.R." was placed in her classroom in 2002. D.R. did not qualify for special education status, and he consistently harassed the other students, interrupted Plaintiff's lessons, and generally undermined the educational environment of the special education class. Id. ¶¶ 34-37. Plaintiff gave administrators numerous notices of the disruptions and threats D.R. brought to the classroom, but the student was not removed or disciplined. Id. ¶ 38. Because of the time Plaintiff was forced to spend trying to control this misbehaving student, her ability to provide for the educational and general support needs of her special education students was greatly hindered. Id. ¶ 46.

In December of 2002, D.R. assaulted Plaintiff. Plaintiff responded by filing a complaint in January of 2003, and by requesting "assault leave," a break from work responsibilities typically granted to teachers and other school staff following a confrontation. State Am. Compl. ¶ 6. After the Coonley administration refused to grant this leave, Plaintiff sought remedy through mediation administered by her union, the Chicago Teachers Union ("CTU"). Id. ¶¶ 6-7; Am. Compl. ¶ 39, 78-79. Two mediation meetings, intended to resolve the dispute, were cancelled by the Defendants. State Am. Compl. ¶ 6. As a result of the third mediation, Plaintiff was granted her assault leave retroactively. Despite this resolution, Plaintiff had a difficult time attaining recompense for her lost wages and health care expenses, and suffered adversely upon her return to the school in March of 2003. Am. Compl. ¶¶ 84-85.

Plaintiff claims that these problems stemmed in large part from the fact that Defendants

Frazin and Ruyack were operating a private magazine distribution business, "Barry Frazin Distributions," using school time, staff, and resources. Id. ¶ 20. This private business took Defendants' attention away from the proper instruction of Coonley students, particularly the special education class. Id. ¶¶ 46-47. Plaintiff made several attempts to notify authorities about what was happening at the school, id. ¶¶ 94-96, and the Defendants retaliated against her as a result, id. ¶ 111. It wasn't until an investigation into the private business activities was launched in spring of 2004 that the truth of the matter came out and Frazin and Ruyack were terminated from their positions. Id. However, by this time Plaintiff had already lost her position at Coonley.

Plaintiff finished out the 2002-2003 academic school year at Coonley, but was fired thereafter. The school's administration apparently terminated Plaintiff at some point during the following summer, and as a result her medical coverage ceased in July of 2003. State Am. Compl. ¶ 94. Plaintiff maintains that school policy required that she receive official notice of her termination by July 15th, 2003, State Am. Compl. ¶ 29, but that she did not receive any such communication, Am. Compl. ¶ 63. Instead, Plaintiff was given notice when she returned to Coonley that fall, at which point Frazin handed her a letter referencing her change in job status. Id. ¶ 65.

Plaintiff first sought legal remedy in state court, but on August 1, 2005, Defendants removed the case from the Circuit Court of Cook County to this court. On December 16, 2005, all state claims were dismissed as more appropriately dealt with in the state courts. Though less than a model of clarity, the Plaintiff's current Amended Complaint seeks remedial action based on the following nine counts:

| | |
|---|---|
| Count 1. | General abrogation of duties, under Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701-96. |
| Count 2. | Retaliation, under Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701-96. |
| Count 3. | Due process violation, under 42 U.S.C. § 1983 |
| Count 4. | Equal Protection violation, under 42 U.S.C. § 1983 |
| Count 5. | Conspiracy, under "Federal law" |
| Count 6. | First Amendment violation, under 42 U.S.C. § 1983 |
| Count 7. | Retaliation, under Federal Whistleblowers Protection Act, 31 U.S.C. § 3730(h); Federal False Claims Act, 31 U.S.C. § 3729 |
| Count 8. | Sexual harassment, under 42 U.S.C. § 1983 |
| Count 9. | Discrimination, under Title IX, 20 U.S.C. §§ 1681-88 |

## STANDARDS

On a motion to dismiss, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Any ambiguities are construed in favor of the plaintiff. *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995). However, the court need "not strain to find inferences favorable to the plaintiffs which are not apparent on the face of th[e] . . . complaint." *Coates v. Illinois State Bd. of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977).

A complaint that complies with the Federal Rules of Civil Procedure cannot be dismissed because it fails to allege facts. The Rules require simply that the complaint state a claim, rather than plead facts that would establish the validity of that claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). "All that need be specified are the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Id*. (citing *Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)). The Seventh Circuit has ruled that stating a claim in federal court requires only "a short statement, in plain (that is, non-legalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Plaintiffs "don't have to file long complaints, don't have to plead facts, don't have to plead legal theories." *Id.* "At this stage of the litigation, we are concerned not with what plaintiff did or did not show, but rather with what plaintiff did or did not allege." *Bworn v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005).

Complaints need not plead law or match facts to every element of a legal theory. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *see also Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir.1999); *Hefferman v. Bass*, 2006 WL 2973677, at *3 (7th Cir. 2006) (stating that it is not necessary to "allege facts supporting each of the elements of the claim"). Rather, Plaintiff must simply plead "sufficient facts...to allow the court and the defendants to understand the gravamen of the plaintiff's complaint," *Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1996). In order to determine whether this requirement has been met, the court may consider facts alleged in the related state action. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

## ANALYSIS

### *Rehabilitation Act and Retaliation*

Plaintiff claims in Count I that Defendants failed to provide her learning disabled students with the "required accommodations, modifications, supports, supplementary aids and services," as is required of a federal funding recipient under Section 504 of the Rehabilitations Act, 29 U.S.C. § 794 ("Section 504").[2] Am. Compl. ¶ 45. In Count II, Plaintiff also contends that she was retaliated against for reporting Coonley's failure to adequately support the learning disabled students. Am. Compl. ¶ 54. Defendant responds that Plaintiff lacks standing under the Rehabilitation Act, that it does not provide for individual capacity suits against municipal officials, and, in addition, that Plaintiff failed to establish that she pursued administrative remedies as is required by 29 U.S.C. § 794a(a)(1).

Plaintiff must have standing to bring a justiciable claim before this court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires that there be an actual case or controversy under Article III of the U.S. Constitution, and that prudential limitations be met, e.g., that a claimant assert only his or her own rights and that his or her claim fall within the "zone of interests" protected by the law invoked. *Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir.), cert. denied, 513 U.S. 961 (1994) (citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)). In this case, both the relevant rights and zone of interest of the Rehabilitation Act are defined by its purpose: "to empower

---

[2] Section 504 states, in part, that "No otherwise qualified individual with a disability in the United States...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society, through...the guarantee of equal opportunity." 29 U.S.C.A. § 701(b)(1); *see Oak RidgeCare Ctr., Inc. v. Racine County*, 896 F.Supp. 867, 871 (E.D. Wis. 1995) (finding that courts should look to statutory language and congressional intent to determine the zone of interests). In the case of Section 504, determining whether standing has been met falls to a determination of whether or not the Plaintiff in question is one of the "intended beneficiarities of the federal financial assistance in question." *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1234 (7th Cir. 1980).

Plaintiff alleges that she suffered concrete injuries in her inability to work, detriments to her health, and subsequent loss of benefits at termination. This is sufficient to generally establish a case or controversy in satisfaction of Article III. Whether these injuries can be remedied in an action under the Rehabilitation Act is a different question. Several courts have refused to limit right of action under the Act to the disabled themselves. *See, e.g., Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277 (7th Cir. 2003) (surveying multiple court opinions allowing Rehabilitation Act or ADA actions brought by concerned organizations on behalf of the disabled; denying claim for lost profit as insufficiently related to the interests of the disabled, rather than more directly relevant injunctive or compensatory remedies); *Access Living of Metro. Chicago v. Chicago Transit* Auth., 2001 WL 492473 (N.D. Ill. 2001) (not reported) ("This court agrees with the majority of courts which have considered this issue and finds that organizations serving the needs of disabled person have standing to bring claims under the ADA if they meet Article III's standing requirements, though they are not themselves individuals with disabilities."); *see also Reynolds Metals*, 629 F.2d at 1227 (in the case of a

handicapped claimant not involved with the federal program in question, held that "to maintain an action for employment discrimination under Section 504, a handicapped individual must be an intended beneficiary of the federal financial assistance received by his employer *or must be able to show that the discrimination directed against him affected the beneficiaries of such aid*") (emphasis added). Whether or not Plaintiff can establish that she is in fact a beneficiary under the Act, or is otherwise adequately connected to its purpose, is no doubt an arguable point. However, it is in any event a question that this court is not prepared to address before Plaintiff has been permitted to expand the record before the court.

In Count II, Plaintiff claims that she was retaliated against in violation of the Rehabilitation Act. This claim may provide a valid cause of action under the act, even where a party could not benefit directly from its provisions. Section 504 of the Rehabilitation Act, at 29 U.S.C. §794(d), expressly incorporates the anti-retaliation provision of Section 503 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. That provision prohibits retaliation against "*any individual* because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id.* (emphasis added).

In order to succeed on a retaliation claim under Section 504, Plaintiff must establish that: (1) she engaged in a statutorily-protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two events. *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Plaintiff adequately plead these components of her retaliation claim. Plaintiff maintains that she "gave numerous notices to the Defendants of

D.R.'s...bullying, assault, battery, intimidation, name calling, molestation, racial slurs against the special ed students," Am. Compl. ¶ 38, and that she "reported the incidents and situations whereby her special education students were discriminated against," *id.* ¶ 48. As in other instances of retaliation, it is essential that she reasonably believed that the actions about which she was complaining were contrary to the law. *See Burks*, 464 F.3d at 758 n. 16 (adopting Title VII retaliation standards for retaliation actions under the Rehabilitation Act); *Firestine v. Parkview Health Sys., Inc.*, 388 F.3d 229, 234 (7th Cir. 2004) (discussing the requirement that Plaintiff bringing retaliation claim under Title VII reasonably believe that protections were triggered). That Plaintiff reasonably believed that these actions were protected under federal statute[3] can be inferred from the allegations in Plaintiff's claims. She also alleges that "[s]he was fired by Defendants without notice, without cause, without a hearing for speaking up for the rights of her special education students," Am. Compl. ¶ 3, which qualifies as an adverse action. Finally, Plaintiff adequately alleges that she suffered these consequences "as a proximate result of the acts and omissions complained of." *Id.* ¶ 57. Therefore, all the necessary elements of a retaliation claim under Section 504 have been adequately plead, or can reasonably be inferred from the pleadings.

However, the Rehabilitation Act provides only certain remedies for violations of its provisions, and the parties against whom a claim can be brought are limited. A private right of action certainly exists under the Act, *Barnes v. Gorman*, 536 U.S. 181, 185 (2002), but it does

---

[3]Under Section 504, a claimant must establish that: (1) her students are disabled as defined by the Act; (2) they otherwise qualified for the educational benefits sought; (3) they have been excluded from those benefits solely because of their disability; and (4) the benefits they seek are part of a program or activity receiving federal financial assistance. *See Burks*, 464 F.3d at 758.

not allow for claims against individual actors, 29 U.S.C. § 794 (a) ("No otherwise qualified individual with a disability in the United States...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving Federal financial assistance*.") (emphasis added).  The obligations of Section 504 therefore apply only to "those who are in a position to accept or reject [the Section's non-discrimination] obligations as a part of the decision whether or not to 'receive' federal funds."  *United States Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597 (1986).

Plaintiff attempts to circumvent this obstacle by describing the individual Defendants' roles: "The defendants in their official capacity are the recipient [sic] of federal funds, defendants Ruyack and Frazin are responsible for implementing the CPS rules, regulations and guidelines that would include the use of funds at John Coonley School within [sic] John Coonley School they had the final, unreviewable discretion."  Resp. to Mot. to Dismiss, at 9.  Plaintiff does not directly address whether or not Frazin and Ruyack had the power to accept or refuse this federal funding that would establish that they had taken on contract-like obligations under Section 504.  *See Paralyzed Veterans*, 477 U.S. at 605-06 (describing the obligations of the Rehabilitation Act in contractual terms, comprising a pact between the government and the entity directly receiving the federal funding); *see Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 120 (7th Cir. 1997) (applying the rationale of *Paralyzed Veterans*, 477 U.S. at 605, and finding that presence on a school's payroll provides insufficient grounds for Section 504 liability, despite the school's acceptance of federal funding).

Plaintiff alleges that all Defendants were federal funding recipients, which is sufficient

for providing notice of the claim against the Board of Ed, as well as Frazin and Ruyack in their official capacities. *See Grzan,* 104 F.3d at 119-20. However, it is impossible to hold Defendants Frazin and Ruyack liable under the act in their role as mere employees of a federal funding recipient, as they could only qualify for federal funds insofar as they were acting in their official capacity. Therefore, Rehabilitation Act claims against them in their individual capacities must be dismissed. *Grzan,* 104 F.3d 116 (affirming dismissal of § 504 claim against individual employee of recipient of federal funds).

Defendant maintains that Plaintiff should not be allowed to pursue either of her claims under the Rehabilitation Act because she has failed to exhaust administrative remedies as required under the law. Mot. to Dismiss Mem. at 9-10 (citing *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318 (7th Cir. 1984)). This is in fact a requirement placed upon federal employees, *see generally id.*, 42 U.S.C. § 2000e-16(a), (c), but the issue is not as clear for claims brought by non-federal employees under Section 504, *Dertz v. City of Chicago*, 912 F.Supp. 319, 324 (N.D. Ill. 1995). The Seventh Circuit has held that the Rehabilitation Act as a general rule does not require exhaustion of administrative remedies. *Lloyd v. Regional Transp. Auth.*, 548 F.2d 1277, 1287 (7th Cir. 1977); *see also Petersen v. Univ. of Wisconsin Bd. of Regents*, 818 F.Supp. 1276, 1278-79 (W.D. Wis. 1993) ("There is no dispute that the Rehabilitation Act of 1973 does not require non-federal employees to exhaust administrative remedies prior to bringing a private right of action in federal court. Both the Rehabilitation Act of 1973 and Title VI of the Civil Rights Act provide only for termination of federal funding for violations of their provisions and do not explicitly address private suits."). However, the "extensiveness of state and federal regulations and attendant administrative remedies *in the field of primary and secondary*

*education*" has been held to necessitate exhaustion of administrative actions before bringing a

Section 504 claim within that area. *Timms v. Met. Sch. Dist. of Wabash County, Indiana*, 722

F.2d 1310, 1318 n. 5 (7th Cir. 1983) (distinguishing the general proposition that exhaustion is

not required by the Rehabilitation Act, established in *Lloyd v. Regional Transp. Auth.*, 548 F.2d

1277, 1287 (7th Cir.1977), due to the availability of adequate remedies).

Plaintiff alleges that she has in fact taken advantage of available administrative courses

of action. Am. Compl. ¶¶ , at 13 (citing complaints reported "more than once to the Board,

Chicago Teachers union, CPS Inspector Generals Office and CPS Internal Audit Unit"). The

exact nature of these complaints, and the extent to which she could have achieved an adequate

remedy by pursuing them, is not yet clear from the record. Again, Plaintiff's (and her attorney's)

factual and legal basis for these allegations may be raised at a later stage.

For the reasons stated above, Defendants' motions to dismiss Counts I and II are

GRANTED with respect to Defendants Frazin and Ruyack in their individual capacities, and

DENIED in all other respects.

## *Section 1983*

As a threshold matter, Defendant claims that all actions under Section 1983 are time-

barred for failing to meet the well-settled two year statute of limitations for such actions in

Illinois. *See Foryoh v. Triton College*, Slip Copy, 2006 WL 2787732, at *1 (7th Cir. 2006).

Civil rights claims accrue when a plaintiff knew or should have known that his or her rights were

violated. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Thus we must consider each

of Plaintiff's claims under Section 1983 to determine when the cause of action accrued, and

whether she therefore met the two-year expiration date on her claim.

It should first be noted that statutes of limitations are disfavored grounds for dismissal in the Seventh Circuit, which has "deemed it irregular to dismiss a claim as untimely" at this stage. *See Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed.Appx. 523 (7th Cir. 2005). "[D]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the plaintiff pleads himself out of court by 'admit[ting] all the ingredients of an impenetrable defense.'" *Id.* (citing *Xechem, Inc. v. Bristol-Myers Sguibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). "Complaints need not anticipate or attempt to defuse potential defenses." *United States Gypsum v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2004) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). However, "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). For this reason, if a cause of action is time-barred from the face of the complaint, a court need not hesitate to dismiss it. *See, e.g., Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670-71 (7th Cir. 1998); *Treganza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993).

The Amended Complaint now under consideration was filed with this court on June 14, 2006, and insofar as it refers for the first time to events ending in the fall of 2003, its claims should be dismissed. However, Defendant fails to address the issue of relation back, which would allow this court to consider the current claims as having been filed at the same date as an earlier filing, provided they rely on the same body of facts. Fed. R. Civ. P. 15(c); *see* Resp. to Mot. to Dismiss at 7. The body of facts in question were arguably introduced in the state amended complaint on June 9, 2005. Whether or not any given claim survives dismissal on a

-14-

statute of limitations basis will depend upon the specific facts of the claim in question, whether or not they were in fact brought out in the state amended complaint, and whether the claim was properly brought at that time.

In Count IV, Plaintiff alleges denial of equal protection, maintaining that Defendants neglected to provide standard benefits of the teaching position, such as: failing to assign a teacher's aide, which took place throughout Plaintiff's tenure; failing to grant assault leave following a student conflict, which lasted from December of 2002 to her return to work in March of 2003; and destroying her teaching materials, which she discovered on March 24th, 2003. State Am. Compl. ¶ 22; *see generally* Am. Compl. ¶¶ 73-83. However, Plaintiff was still trying to address some of these problems through formal administrative remedies after the school year ended – Plaintiff's complaints and grievances were to some extent being heard by CTU and/or CPS as late as June 3, 2004. State Am. Compl. ¶ 22. Therefore, it is impossible to determine with certainty when she should have been aware of her equal protection claim for the purpose of determining timeliness.

Defendants have attacked Count IV of the complaint on the grounds that Plaintiff does not provide "sufficient facts to support a Section 1983 cause of action against the Board" and "does not include any facts in her complaint which indicate that the Board adopted a policy of violating her constitutional rights." Mot. to Dismiss Mem. at 6. However, Plaintiff claims that all Defendants were in fact involved in a policy of constitutional deprivation: "Defendants Board and Ruyack and Frazin in their official capacities under color of law, regulation, custom or usage have subject [sic] the Plaintiff to the deprivation of equal protection." Am. Compl. ¶ 73. Defendant is of course correct that the factual basis for any such custom is not present in the

record, but it is nonetheless alleged.  Defendants' motion to dismiss Count IV as a whole is
DENIED.

Defendants also maintain that a single factual situation cannot form the basis for a claim
under both Title IX and Section 1983.  Mot. to Dismiss Mem. at 4.  Because Count IV is based
in part on Defendants' failure to provide a teacher's aide – the same basis for her Title IX
discrimination claim in Count IX.  Defendants therefore move to strike this claim from Count
IV.  Insofar as Title IX provides a comprehensive scheme for remedying discriminatory conduct
by educational institutions, it does indeed preclude claims brought on identical facts under the
more general Section 1983.  *See Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 862-63 (7th Cir.
1996) (finding that Title IX "gives plaintiffs access to the full panoply of judicial
remedies...suggest[ing] that Congress saw Title IX as the device for redressing any grievance
arising from a violation of federal civil rights by an educational institution").  Therefore, a claim
that was brought or could have been brought under Title IX should be stricken.  *See id.*

However, Title IX's preclusive effect should not be applied where it does not provide an
alternative path toward a remedy.  *Id.* (basing its reasoning on Title IX's provision of adequate
remedies).  The named defendants could not have exerted control over federal funding as
individuals, and therefore are not the appropriate parties to a Title IX action in that capacity.  *See
Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-41 (1999).
As such, the preclusive effect of Title IX cannot be applied to a Section 1983 claim brought
against Frazin and Ruyack in their individual capacities.  For that reason, Defendants' motion to
strike Count IV's claim based upon the failure to provide a classroom aide is GRANTED with
respect to the Board of Ed, as well as Frazin and Ruyack in their official capacities.  In every

other respect this motion is DENIED.

In Count VIII, Plaintiff claims that she suffered actionable sexual harassment under Section 1983.[4] Plaintiff has not provided the dates on which these actions took place, but when all reasonable infererences are resolved in her favor, she may have met the relevant two-year statute of limitations. Most events took place while she "was employed at the Coonley School," a time frame which essentially ended with the 2002-2003 academic year. Am. Compl. ¶ 115. However, the actions cited took place outside of the classroom context: inappropriate hallway discussions; forced dancing and an attempted kiss at a Christmas party; the comment "why don't you get married, the men wear the pants"; and "sexist innuendos and remarks comments [sic] on bust size and butts." *Id.* When these facts are viewed in the light most favorable to the Plaintiff, it is possible that the harassing nature of these actions was made manifest at some point after June 9, 2003, in which case the factual allegations of her amended state complaint filed on June 9, 2005, might have been properly filed. If that is true, her current sexual harassment claim, related back to the state complaint, could survive the two year statute of limitations.

Sexual harassment, as a general matter, is an actionable constitutional violation under Section 1983. *Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1185 (1986); *see also Collins v. Vill. of Woodbridge*, 96 F.Supp.2d 744, 751 (N.D. Ill. 2000) (finding that it has been established in the Seventh Circuit since at least 1986 that sexual harassment in the workplace violates the Equal Protection Clause). In order to succeed on any Section 1983 claim against a municipality, Plaintiff must establish that her injuries were caused by unconstitutional policies, customs, or

_____

[4]In fact, plaintiff does not clarify what law she brings this claim under, but did not respond affirmatively or negatively to Defendants' assumption that Section 1983 provided the cause of action. Therefore, this court will adopt this framing of the sexual harassment claim.

practices.  *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Respondeat superior provides no basis for municipal liability in Section 1983 actions.  *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir.1999).  Instead, Plaintiff must allege some basis for inferring that: (1) there was an express policy that resulted in a constitutional deprivation; (2) there existed a widespread practice that was so well-settled as to constitute a custom or usage with the force of law; or (3) the constitutional deprivation was perpetrated by a person with final policymaking authority.  *McTigue c. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Plaintiff does not allege any of these means of implicating the Board of Ed, but this court must nonetheless determine if one can be reasonably inferred from the complaint.  There is no allegation of an express policy of depriving women of their right to equal protection, and no reason to infer that one might have been in place.  As a matter of law, school administrators do not have final policymaking authority with respect to CPS sexual harassment regulations, so Ruyack's actions do not signify the school system's general policy.  *See McMillan v. Monroe County, Alabama*, 520 U.S. 781 (1997) (whether public employee is final policymaker on given issue is governed by state law); *Brandt v. Bd. of Educ. of City of Chicago*, 420 F.Supp.2d 921, 937 (N.D. Ill. 2006) (finding that, under Illinois law, Board of Ed rules do not give school principals the authority to make city-wide policy decisions, and instead reserve that authority for the Board itself); *see also Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) ("[M]ere authority to implement pre-existing rules is not the authority to set policy...").  Therefore, Plaintiff can proceed against the Board of Ed only if she establishes that Ruyack's actions were done in conjunction with a widespread practice rising to the force of a CPS-wide rule or law.  *McTigue*, 60 F.3d at 382;  *see also Board of the Cty. Comm'rs v. Brown*, 117 S.Ct. 1382, 1388

(1997).  Plaintiff has provided no factual predicate from which this can be reasonably inferred.
All actions listed in her complaint are those of a single defendant, Ruyack, which indicates the
tortious conduct of an individual rather than a general CPS practice.  Am. Compl. ¶ 115.  The
only connection between Ruyack's actions and the Board of Ed itself, when the allegations are
viewed in the light most favorable to the Plaintiff, is that she "complained to the administration
but the sexual harassment continued."  Am. Compl. ¶ 116.  Generally, mere failure to act is not a
sufficient basis on which to infer a custom or policy.  *Smith v. Chicago Sch. Reform Bd. of
Trustees*, 165 F.3d 1142 (7th Cir. 1999).  Where the frequency, substance, and recipient of those
complaints is incomprehensible from the pleadings, it would be unreasonable to read this
oversight as amounting to "approval, acquiescence, or encouragement of the alleged
constitutional violation."  *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986).

To state a Section 1983 claim against a defendant in his or her personal capacity, Plaintiff
must allege that the defendant caused or personally participated in a statutory or constitutional
violation, and did so under color of law.  *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 866
(7th Cir. 2004).  Taking the factual allegations as true, it can be inferred that Mr. Ruyack did in
fact participate in constitutional violations by consistently harassing her in a discrimininatory
manner.  It also is explicitly alleged that he did so under "color of law."  Am. Compl. ¶ 114
(incorporating language of ¶ 59 into claim for sexual harassment).  For these reasons,
Defendants' motion to dismiss Count VIII is DENIED with respect to Ruyack in his personal
capacity, but GRANTED in all other respects.

<u>*Conspiracy*</u>

In Count V, Plaintiff charges Defendants with conspiring to violate her constitutional right to due process and equal protection.[5] Am. Compl. ¶ 87. Defendant contends that this claim does not meet the required level of specificity under the federal rules. Mot. to Dismiss Mem. at 2-4; *see* Fed. R. Civ. P. 8.

Defendant is incorrect in demanding of Plaintiff's complaint a level of factual particularity that would amount to a heightened pleading requirement. *See Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). It is true that Plaintiff must at some point establish a meeting of the minds involving all Defendants, as well as an intent to inflict the alleged constitutional deprivation. *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir. 1979), rev'd on other grounds, *Hanrahan v. Hampton*, 446 U.S. 754 (1980). However, even at trial the evidence required of Plaintiff is less concrete than Defendants suggest. *See Brucar v. Rubin*, 638 F.2d 987, 993 (7th Cir. 1980) ("Conspiracies are ordinarily clandestine, so that proof of them will often be by purely circumstantial evidence.").

At this stage of the case notice is all that is necessary. In the case of a conspiracy it is sufficient for the Plaintiff to merely indicate the parties, the general purpose, and the approximate date of the actions in question, so that the defendant is on notice of the charges. *Walker,* 288 F.3d at 1007. Plaintiff has outlined these components of the alleged conspiracy: the involved parties were Frazin, Ruyack, and the School Board, Am. Compl. ¶¶ 87, 90; the purpose was to deprive Plaintiff of "due process and equal protection rights" by refusing to give her

---

[5]Count V also diverges into a discussion of the Defendants' magazine enterprise and the various deprivations suffered by Plaintiff's students, but neither of these factual situations amounts to an actionable claim for Ms. Blazquez.

assault leave and a proper pre-termination process, Am. Compl. ¶¶ 87-88; and the actions took place leading up to and including the 2002-2003 academic year. *See Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985) (finding that the plaintiff must only "plead sufficient facts from which a conspiracy can be inferred" in order to survive a motion to dismiss). For this reason, Defendants' motion to dismiss Count V is DENIED.

## *Whistle blower Act*

Plaintiff claims that she suffered retaliation at the hand of the Defendants after she reported that Frazin and Ruyack were operating the magazine enterprise on school time. Am. Compl. ¶ 111. Defendants claim that Plaintiff has failed to allege the underlying action with particularity. Mot. to Dismiss Mem. at 12. This overstates Plaintiff's burden. The purpose of notice is merely to ensure that Defendants are aware of the charges against them. Here, it is reasonably clear that Plaintiff is claiming that her termination and the other actions taken against her occurred in response to her investigation into and reporting on the principal and vice-principal's alleged violations of the Fraud Act. Am. Compl. ¶¶ 104, 111-13. In order to establish that this retaliation occurred, the Plaintiff must establish that: "(1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under section 2302(b)(8) [Whistleblower Protection Act]; (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure." *Lachance v. White*, 174 F.3d 1378, 1380 (Fed. Cir. 1999) (citation and internal quotation marks omitted). However, at this point, it is not necessary that Plaintiff prove each of these elements – only that she provide

sufficient allegations from which they could be inferred.  Because Plaintiff has adequately done this, Defendant's motion to dismiss Count VII is DENIED.

<u>*Title IX*</u>

Plaintiff alleges that she was discriminated against when the Coonley administration failed to provide her with a teacher's aide, while other male teachers received aides.  Defendant responds by saying that a claim under Title IX cannot be brought against individuals, and that the claim is preempted by the availability of recourse under Title VII.  The court agrees with Defendants' interpretation.  An action that can be brought under Title VII cannot be brought under Title IX.  *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862-63 (7th Cir. 1996).  This protects the sanctity of Title VII's comprehensive scope, as well as the lawmakers' intention to see that its remedial scheme not be bypassed.  *See Howard v. Bd. of Educ. of Sycamore Cmty. Unit Sch. Dist. No. 427*, 893 F.Supp. 808, 814-15 (N.D. Ill. 1995); *see also Burrell v. City Univ. of New York*, 995 F.Supp. 398 (S.D.N.Y. 1998) (discussing courts' general approach to Title IX's preemption by Title VII).  While the overall scope of Plaintiff's claims might seem more appropriately addressed as a systemic educational problem under Title IX, this particular claim is based upon the harassment Plaintiff herself suffered.  There is therefore no reason to look beyond the comprehensive scope of remedies and actions available to Plaintiff under Title VII.  Defendants' motion to dismiss Count IX is GRANTED.

*Motion to Strike Exhibits*

In her First Amended Complaint, Plaintiff states that the document "incorporates all exhibits filed in this cause," referencing the seventy-eight exhibits she has carried over from her pleadings in state court. Defendant moves to strike all of these exhibits in that they violate Plaintiff's students' rights under the Illinois School Student Records Act ("Student Records Act"). 105 ILCS 10/1 et seq. (West 2002). Indeed, the law precludes any "School Student Record" from being"released, transferred, disclosed or otherwise disseminated," where that term is defined as "any writing or other recorded information concerning a student and by which a student may be individually identified, maintained by a school or at its direction *or by an employee of a school*, regardless of how or where the information is stored." *Id.* at §§ 10/2(d), 10/6(a) (emphasis added). Plaintiff asserts that the documents in question are all useful to her case, without addressing the legal hurdle, or the privacy rights of her students, in any direct way. *See* Resp. to Dismiss Mot. at 15. Defendant's motion to strike all exhibits is therefore GRANTED, though Plaintiff may be able to introduce these documents into evidence.

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part, as described above. Defendants' motion for an additional ten days in which to answer the remaining allegations and claims in Plaintiff's First Amended Complaint is GRANTED.

Enter:


/s/ David H. Coar

David H. Coar
United States District Judge

Dated: **November 14, 2006**